LAW OFFICES OF
# JEFFREY LICHTMAN
11 EAST 44TH STREET
SUITE 501
NEW YORK, NEW YORK 10017
www.JeffreyLichtman.com

JEFFREY LICHTMAN
JEFFREY EINHORN
JASON GOLDMAN

PH: (212) 581-1001
FX: (212) 581-4999

May 8, 2020

**FILED VIA ECF**
Hon. Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re: <u>United States v. Pinto-Thomaz, et al.</u>, 18 CR 579 (JSR)

Dear Judge Rakoff:

      I am writing on behalf of defendant Jeremy Millul to respectfully request reconsideration of the Court's April 13, 2020 Order ("April 13 Order") denying Mr. Millul's request for compassionate release.[1] Reconsideration is warranted in this instance because counsel has located additional medical records from France concerning Mr. Millul's asthma, not available at the time of the April 13 Order, which may "reasonably be expected to alter the conclusion reached by the [C]ourt." <u>Cordero v. Astrue</u>, 574 F. Supp.2d 373, 379 (S.D.N.Y. 2008) <u>citing</u> <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).[2] Additionally, in lieu of commuting Mr. Millul's sentence, we simply request that the final two weeks be served in home confinement.[3] In this manner, Mr. Millul can avoid being transferred to one of ICE's immigration detention centers, which presently house over 700 detainees with confirmed cases of COVID-19. <u>See</u> ICE Guidance on COVID-19, Confirmed Cases, available at: https://www.ice.gov/coronavirus (last viewed May 7, 2020).

---

[1] In the alternative to reconsideration, Mr. Millul renews his March 30 Motion and supplements the arguments and materials contained therein with the contents of this application.

[2] <u>See also</u> <u>United States v. Morvillo-Vidal</u>, No. 10 Cr. 222 (RWS), 2011 WL 4072173, at *2 (S.D.N.Y. September 13, 2011) ("[T]he major grounds justifying reconsideration are an intervening change in the law, <u>the availability of new evidence,</u> or the need to correct a clear error or prevent manifest injustice") (emphasis supplied).

[3] <u>See, e.g.</u>, <u>United States v. Jones, et al.</u>, 18 CR 834 (PAE), April 2, 2020 Order Granting Compassionate Release, ECF No. 451 (converting the remaining months of rapper Tekashi 6ix9ine's sentence to home confinement due to, <em>inter alia</em>, his asthma condition).

JEFFREY LICHTMAN

Hon. Jed S. Rakoff
United States District Judge
May 8, 2020
Page 2

While the Court's reluctance to accept that Mr. Millul's childhood asthma "continues to impact him" is certainly understandable based on the prior record (see April 13 Order at p. 8) we are now in possession of materials which document Mr. Millul not only suffering from adult asthma, but also his experiencing a "severe acute asthma attack" while in France in 2017. See April 17, 2020 Letter of Dr. Jonathan Bouhassira ("Bouhassira Ltr."), attached as Exhibit A. These records, coupled with co-defendant Pinto-Thomaz's early release from FCI Otisville by the Bureau of Prisons after serving just half of his 14 month sentence, ICE's refusal to hold a bond hearing prior to Mr. Millul entering their custody, and the recent statistics establishing that COVID-19 has been located throughout East Coast ICE detention centers, establish "extraordinary and compelling reasons" for granting this application. 18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Millul's Adult Asthma

While visiting France in July 2017, Mr. Millul suffered an acute asthma attack. See Ex. A, Bouhassira Ltr., at p. 1. Although records documenting this incident were previously unavailable due to difficulties in connecting with his physician because of the pandemic, counsel is now in possession of both a letter from Dr. Jonathan Bouhassira, who relays that Mr. Millul has suffered "iterative episodes of asthma cris[i]s" since he was a child, and a copy of the prescription that he issued in connection with treating him in 2017 when he experienced an asthma attack.[4] Id.

Specifically, Dr. Bouhassira informs: "In July 2017, Mister Jeremy Millul was in France and requested my advice for a severe breathing difficulty, which ended up being a severe acute asthma attack. I then prescribed his usual crises treatment, which consists [of] one inhalation of Ventolin every 10 minutes and oral administration of cortisone." Id. (emphasis supplied). Corroborating this account is a copy of Dr. Bouhassira's prescription, dated July 28, 2017, which calls for the asthma medication Ventolin, as well as Solupred (prednisone), the antibiotic Augmentin, and Vitamin C. See July 28, 2020 Prescription, attached as Exhibit B. Because Mr. Millul had not suffered an acute asthma attack since 2017, he did not think to report the condition to Probation for inclusion in his PSR and he likewise did not report it to the Bureau of Prisons upon being admitted to Allenwood at a time when having asthma was not viewed as being especially dangerous. Of course, had Mr. Millul surrendered to FCI Allenwood when the public was more aware of the potential co-morbidities associated with COVID-19 and asthma, he would have informed prison officials of his condition.

---

[4] These documents were also provided to the BOP by the French Embassy on behalf of Mr. Millul after the Court's April 13 Order.

JEFFREY LICHTMAN

Hon. Jed S. Rakoff
United States District Judge
May 8, 2020
Page 3

In addition to documenting Mr. Millul's 2017 episode, Dr. Bouhassira also included in his letter "three reasons" why Mr. Millul's asthma carries with it "an excess mortality risk," together with supporting documentation. Ex. A at p. 1. First, as the U.S. Department of Health and Human Services has identified, "asthma ... [is] a significant risk factor of the severe form of coronavirus in patients between 18 and 49 years of age." Id. Indeed, among adults hospitalized and suspected of being infected with COVID-19 between March 1-30, 2020, 34.6% had chronic lung disease. Id. Second, cortisone, which is commonly utilized to treat asthma, is "associated [with] a severe increase of deaths of patients infected with coronavirus." Id. Third, Dr. Bouhassira points to the "excess mortality rate for prisoners presenting chronic diseases." Id. at p. 2. Together, according to Dr. Bouhassira, continued incarceration "exposes [Mr. Millul] to a severe risk of contamination, of severe pulmonary infection and to an excess mortality." Id.

### Additional Records Concerning Mr. Millul's Asthma as a Child

Since the Court's April 13 Order denying the defendant's application for compassionate release, counsel has also secured Mr. Millul's childhood health record. Called a Carnet De Santé and loosely translated as 'health book,' it is a record of health that is required to be maintained for children in France.[5] See Translated Pages from Jeremy Millul's Carnet De Santé, attached as Exhibit C. Together, the pages from this document submitted with this letter indicate that the existence of Mr. Millul's asthma was confirmed in 1997, 1999 and 2003 – and that he had previously been prescribed Ventolin and Celestene – a steroid. Id. It cannot be concluded, therefore, that Mr. Millul's asthma was non-existent or merely passing. Instead, it is a condition that has been documented by doctors throughout his life.

### The Early Release of Co-Defendant Pinto-Thomaz from FCI Otisville

As opposed to Mr. Millul, whose request to the BOP for release under the CARES Act was denied on April 16, 2020, co-defendant Sebastian Pinto-Thomaz was released on May 7, having served just seven of the 14 months of incarceration imposed by the Court. This is relevant for Mr. Millul's application, because in determining whether to grant an application for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Courts are directed to review

---

[5] See Service-Public.FR, The Official Site of the French Administration, available at: https://www.service-public.fr/particuliers/vosdroits/F810 (last viewed May 3, 2020) ("The health book is a document which contains the medical information necessary for monitoring the health of children up to the age of 18. Its use is reserved for health professionals and its consultation subject to the agreement of the parents").

JEFFREY LICHTMAN

Hon. Jed S. Rakoff
United States District Judge
May 8, 2020
Page 4

"the factors set forth in § 3553(a) to the extent that they are applicable ..." 18 U.S.C. § 3582(c)(1)(A)(i).

Pinto-Thomaz's early release significantly changes the sentencing calculus as it applies to Mr. Millul, and calls for Millul's release in order to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct ...." 18 U.S.C. § 3553(a)(6). With his early release, Pinto-Thomaz – who unlike Mr. Millul did not immediately accept responsibility for his crimes, which involved a violation of the fiduciary duty that he owed his company – will end up serving a sentence just two months longer than Mr. Millul. Put another way, the Court initially sentenced Mr. Millul to a term of imprisonment that was approximately 35% of Pinto-Thomaz's term; with the BOP's lopsided intervention, Mr. Millul's sentence is now over 71% of his codefendant's term. Even the immediate release of Mr. Millul would not restore the proportions initially established by the Court.

### Continued Efforts to Have Mr. Millul's Immigration Detainer Lifted

As prior counsel for Mr. Millul indicated to the Court, the defendant would be eligible for release to home or community confinement via the First Step Act, but for his immigration detainer.[6] Since the Court's April 13 Order, Mr. Millul's immigration attorney has been in contact with officials from Immigration and Customs Enforcement in hopes that the detainer might be lifted and a bond set it its place in order to facilitate Mr. Millul's release. Unfortunately, these efforts have met a dead end. While ICE routinely holds institutional custody proceedings, a setting where the detainer may be addressed prior to the inmate's release from BOP custody, these proceedings are only available to inmates who have six months or more remaining of their sentence. In the absence of these six remaining months, inmates must wait for ICE to take custody of them before they may address their detainer. The requests to have ICE hold a bond hearing for Mr. Millul prior to taking physical custody of him have therefore been denied due to this policy.

### The Health Risks Posed by ICE Detention Facilities

Given the above-noted barriers in resolving Mr. Millul's immigration detainer prior to his completing his sentence on June 4, it is clear that he will not be released to his wife and children on that date. Instead, he will be transported to an immigration detention center, likely a facility located in New Jersey or Pennsylvania given their proximity to Allenwood, while he waits to be either released on bond or held while it is determined if he is removable from the United States.

---

[6] The legality of Mr. Millul's immigration detainer is the subject of a habeas petition, Millul v. Barr, 20 CV 03466, filed on May 4, 2020 and pending before the Hon. Andrew L. Carter, Jr.

JEFFREY LICHTMAN

Hon. Jed S. Rakoff
United States District Judge
May 8, 2020
Page 5

And while he will have completed his sentence for his criminal case, he will still be locked up and the extraordinary health and safety concerns that he faces due to COVID-19 will continue. Indeed, ICE presently reports that it has 705 detainees in its custody with confirmed cases of COVID-19, including 34 cases at the New Jersey facilities and 31 cases at the Pennsylvania facilities.[7] The first ICE detainee infected with COVID-19 died on Wednesday.[8]

    The high rate of infection for ICE detainees is hardly surprising. The conditions of the Essex County facility and other ICE detention centers were previously determined to be atrocious by the Department of Homeland Security, Office of Inspector General – they presented significant food safety concerns, inadequate medical care, lack of basic supplies critical to basic personal hygiene, and dilapidated bathrooms permeated with mold and unusable toilets.[9] Certainly, these conditions also "expose[] [Mr. Millul] to a severe risk of contamination, of severe pulmonary infection and to an excess mortality." Ex. A, Bouhassira Ltr., at p. 2. It is for these reason that, even with less than one month remaining prior to his release from BOP custody, Mr. Millul requests reconsideration of his application for compassionate release.

    Conclusion

    With the medical records appended to this letter, there can be no lingering doubt that Mr. Millul suffers from asthma. He had asthma as a child and suffered an attack as recently as 2017. Similarly, there can be no question that Mr. Millul would be at risk of a severe health complication or death if he is not released from incarceration prior to being transferred to an ICE detention center based on the aforementioned statistics. An order permitting Mr. Millul to serve the end of his prison sentence at home would allow him to appear for his removal hearings on his own volition, without subjecting him to these dangers.

---

[7] See ICE Guidance on COVID-19, Confirmed Cases, available at: https://www.ice.gov/coronavirus (last viewed May 7, 2020).

[8] See Maria Santana and Catherine Shoichet, First ICE detainee dies from coronavirus, May 6, 2020, CNN.com, available at: https://www.cnn.com/2020/05/06/politics/ice-detainee-coronavirus/index.html (last viewed May 7, 2020).

[9] See Office of the Inspector General, Concerns about ICE Detainee Treatment and Care at Four Detention Facilities, June 3, 2019, available at: https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf (last viewed May 4, 2020).

JEFFREY LICHTMAN

Hon. Jed S. Rakoff
United States District Judge
May 8, 2020
Page 6

      For the reasons stated herein, we respectfully request reconsideration of the Court's April 13, 2020 Order denying compassionate release for Jeremy Millul.

                                      Respectfully submitted,

                                      Jeffrey Lichtman

Encs.

cc:    All counsel (by email and ECF)